## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

-------------------------------------------------------- X

*In re*                                                            :        Chapter 11

                                                               :

SuperMedia Inc., *et al.*,[1]                                      :        Case No. 13-10545 (KG)

                                                               :

         Debtors.                            :        Jointly Administered

                                                               :

                                                               :        **RE: D.I. 7**

                                                               :

-------------------------------------------------------- X

### INTERIM ORDER UNDER 11 U.S.C. §§ 105, 361, 362, 363, 507 AND 552, AND BANKRUPTCY RULES 2002, 4001 AND 9014 (I) AUTHORIZING DEBTORS TO USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION LENDERS AND (III) <u>SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(b)</u>

### ("SUPERMEDIA INTERIM ORDER")

Upon the motion, dated March 18, 2013 (the "<u>Motion</u>") [Docket No. 7], of SuperMedia

Inc. ("<u>SuperMedia</u>") and its affiliated debtors, each as debtor and debtor-in-possession

(collectively, the "<u>Debtors</u>") in the above-captioned cases (the "<u>Cases</u>"), for interim and final

orders under sections 105, 361, 362, 363, 507 and 552 of title 11 of the United States Code, 11

U.S.C. §§ 101, <u>et seq.</u> (as amended, the "<u>Bankruptcy Code</u>"), and Rules 2002, 4001 and 9014 of

the Federal Rules of Bankruptcy Procedure (as amended, the "<u>Bankruptcy Rules</u>"), seeking:

(I)      authorization for the Debtors, pursuant to sections 105, 361, 362,

363, 507 and 552 of the Bankruptcy Code, to (a) use the Cash Collateral (as

defined in paragraph 5(e) below), and all other Prepetition Collateral (as defined

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: SuperMedia Inc. (5175), SuperMedia LLC (6092), SuperMedia Services Inc. (2834) and SuperMedia Sales Inc. (4411). For the purpose of these chapter 11 cases, the service address for the Debtors is: 2200 West Airfield Drive, P.O. Box 619810, D/FW Airport, Texas, 75261.

in paragraph 5(d) below); and (b) provide adequate protection to the Administrative Agent and the Lenders (each as defined below) under the Loan Agreement, dated as of December 31, 2009 (as amended, supplemented or otherwise modified, the "Loan Agreement"), among SuperMedia, in its capacity as the borrower, the lenders from time to time party thereto (including in their (or their affiliates') capacity as party to a Swap Agreement or Cash Management Agreement (as defined in the Guarantee and Collateral Agreement (as defined in paragraph 5(a) below)), collectively, the "Lenders") and JPMorgan Chase Bank, N.A., as Administrative Agent and Collateral Agent (the "Administrative Agent");

(II)     authorization for the Administrative Agent to exercise remedies under the Loan Documents and this interim order (this "Interim Order") upon the occurrence and during the continuance of a Termination Event (as defined in paragraph 12 below);

(III)     subject to entry of the Final Order (as defined in paragraph VI below), authorization to grant adequate protection liens on the proceeds and property recovered in respect of the Debtors' claims and causes of action (but not on the actual claims and causes of action) arising under sections 544, 545, 547, 548 and 550 of the Bankruptcy Code (collectively, the "Avoidance Actions"), as identified pursuant to Rule 4001-2(a)(i)(D) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules");

(IV) subject to entry of the Final Order, and except to the extent of the Carve Out (as defined in paragraph 10(c) below), the waiver by the Debtors of any right to surcharge against the Prepetition Collateral or the Collateral (as defined in paragraph 10(b) below) pursuant to section 506(c) of the Bankruptcy Code or any other applicable principle of equity or law, as identified pursuant to Local Rule 4001-2(a)(i)(C);

(V)    to schedule, pursuant to Bankruptcy Rule 4001, an interim hearing (the "Interim Hearing") on the Motion to be held before this Court to consider entry of this Interim Order (a) authorizing the Debtors to use the Cash Collateral; and (b) granting adequate protection to the Administrative Agent and the Lenders;

(VI)    to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") for this Court to consider entry of a final order (the "Final Order") authorizing the Debtors on a final basis to continue to use the Cash Collateral and authorizing and approving the relief requested in the Motion to become effective pursuant to the Final Order; and

(VII)    waiver of any applicable stay with respect to the effectiveness and enforceability of this Interim Order (including a waiver pursuant to Bankruptcy Rule 6004(h)).

The Interim Hearing having been held by this Court on March 19, 2013; and upon the record made by the Debtors at the Interim Hearing (including, without limitation, the Declaration of Samuel D. Jones); and this Court having heard and resolved or overruled all objections to the interim relief requested in the Motion; and it appearing that the

3

interim relief requested in the Motion is in the best interests of the Debtors, their estates

and creditors; and after due deliberation and consideration and sufficient cause appearing

therefor,

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1. *The Motion.* The Motion is granted on an interim basis as set forth herein. Any

objection to the Motion to the extent not withdrawn or resolved is hereby overruled.

2. *Jurisdiction.* This Court has core jurisdiction over the Cases commenced on

March 18, 2013 (the "Petition Date"), this Motion, and the parties and property affected hereby

pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28

U.S.C. §§ 1408 and 1409.

3. *Committee Formation.* A statutory committee of unsecured creditors has not been

appointed in the Cases.

4. *Notice.* Notice of the Motion, the relief requested therein and the Interim Hearing

was served by the Debtors, whether by telecopy, email, overnight courier or hand delivery, on

the thirty (30) largest (on a consolidated basis) unsecured creditors of the Debtors, the cash

management banks with whom the Debtors maintain deposit, lockbox, concentration,

disbursement and similar accounts (the "Cash Management Banks"), counsel to the

Administrative Agent, counsel to Dex One Corporation, the United States Securities and

Exchange Commission, the Office of the United States Trustee for the District of Delaware (the

"U.S. Trustee"), the Internal Revenue Service and any party that has requested notice pursuant to

Bankruptcy Rule 2002. Under the circumstances, the notice given by the Debtors of the Motion,

4

the relief requested therein and of the Interim Hearing constitutes due and sufficient notice

thereof and complies with Bankruptcy Rules 2002, 4001(b), (c) and (d).

     5.    *Debtors' Stipulations.*  Without prejudice to the rights of any other party (but

subject to the limitations thereon contained in paragraphs 21 and 22 below) the Debtors admit,

stipulate, and agree that:

     (a)    as of the Petition Date, the Debtors were indebted and liable to the

Lenders, without defense, counterclaim or offset of any kind, for all of the Obligations[2],

including without limitation, the Loans made by the Lenders in the aggregate principal amount

of approximately $1,441,990,818 under the Loan Agreement, plus accrued and unpaid interest,

indemnification obligations, cash management obligations, obligations arising under Swap

Agreements and fees and expenses (including, without limitation, the reasonable fees and

expenses of the Administrative Agent's attorneys, consultants, accountants, experts and financial

advisors) and other obligations incurred in connection therewith, in each case in accordance with

the terms of the Loan Documents; the Obligations are unconditionally and irrevocably

guaranteed by the Debtors pursuant to the Guarantee and Collateral Agreement, dated as of

December 31, 2009 (as amended, supplemented or otherwise modified, the "Guarantee and

Collateral Agreement"), among SuperMedia, the other Debtors party thereto from time to time

and the Administrative Agent;

     (b)    the Obligations constitute the legal, valid and binding obligation of the

Debtors, enforceable in accordance with their terms (except as subject to the stay of enforcement

arising under section 362 of the Bankruptcy Code);

---

[2]    Capitalized terms used in this Interim Order and not otherwise defined herein shall have the meanings given to such terms in the Loan Agreement.

01:13446551.2

(c) (i) no portion of the Obligations and no amounts paid at any time to the Administrative Agent or Lenders in respect of the Obligations, the Loan Documents, the Support Agreement and the transactions contemplated thereby is subject to contest, attack, objection, recoupment, defense, setoff, counterclaim, avoidance, recharacterization, reclassification, reduction, disallowance, recovery or subordination or other challenge pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (ii) the Debtors do not have any claims, counterclaims, causes of action, defenses or setoff rights related to the Obligations or the Loan Documents, whether arising under the Bankruptcy Code or applicable nonbankruptcy law, on or prior to the date hereof, against the Administrative Agent, the Lenders, and their respective affiliates, subsidiaries, agents, officers, directors, employees, attorneys and advisors;

(d)      the liens and security interests granted to the Administrative Agent for the benefit of the Lenders pursuant to and in connection with the Guarantee and Collateral Agreement and the other Loan Documents are valid, binding, perfected, enforceable, first priority liens and security interests on the "Collateral" as defined in the Loan Agreement (such "Collateral", including the Cash Collateral, collectively referred to herein as the "Prepetition Collateral"), subject in each case to permitted exceptions under the Loan Agreement and the other Loan Documents, and are (i) not subject to objection, defense, contest, avoidance, recharacterization, reclassification, reduction or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law by any person or entity and (ii) subject and subordinate only to (A) the Carve Out, (B) the liens and security interests granted to secure the Adequate Protection Obligations (as defined in paragraph 9 below) and (C) valid, perfected and unavoidable liens permitted under the Loan Documents to the extent such liens are permitted to be senior to the

6

liens of the Administrative Agent on the Prepetition Collateral pursuant to the terms of the Loan Documents; and

(e)      the Debtors' cash, including without limitation, all cash and other amounts on deposit or maintained in any account or accounts by the Debtors and any amounts generated by the collection of accounts receivable, sale of inventory or other disposition of the Prepetition Collateral, constitutes proceeds of the Prepetition Collateral and, therefore, is the Administrative Agent's cash collateral within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").

6.      *Findings Regarding the Use of Cash Collateral and Prepetition Collateral.*

(a)      Good cause has been shown for the entry of this Interim Order.

(b)      The Debtors have an immediate need to use the Prepetition Collateral, including the Cash Collateral, to permit, among other things, the orderly continuation of their businesses, to maintain and generate the confidence of their customers and vendors and to preserve the going concern value of the Debtors.

(c)      The terms of the use of the Prepetition Collateral (including the Cash Collateral) pursuant to this Interim Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(d)      The terms of the use of the Prepetition Collateral (including the Cash Collateral) have been the subject of extensive negotiations conducted in good faith and at arm's length among the Debtors, the Administrative Agent and the Lenders, and, pursuant to sections 105, 361 and 363 of the Bankruptcy Code, the Administrative Agent and the Lenders are hereby

7

found to be entities that have acted in "good faith" in connection with the negotiation and entry of this Interim Order, and each is entitled to the protection provided under section 363(m) of the Bankruptcy Code.

(e)    The Debtors have requested entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and (d).  Absent granting the interim relief sought by this Interim Order, the  Debtors' estates will be immediately and irreparably harmed.  The use of the Prepetition Collateral (including the Cash Collateral) in accordance with this Interim Order is in the best interest of the Debtors' estates.

7.    *Authorization of Use of Cash Collateral and Prepetition Collateral.*  The Debtors are hereby authorized to use the Prepetition Collateral (including the Cash Collateral) during the period from the Petition Date through and including the Termination Date only for (i) working capital, general corporate purposes and administrative costs and expenses of the Debtors incurred in the Cases and in the ordinary course of business, subject to the terms hereof; and (ii) adequate protection payments to the Administrative Agent and the Lenders, as contemplated herein.  All post-petition distributions and transfers by a Debtor to any other Debtor (each, a "Debtor Transferee") shall constitute an allowed administrative expense under sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code against such Debtor Transferee in the aggregate amount of such distribution or transfer, which administrative expense claim against such Debtor Transferee shall be junior in all respects to the 507(b) Claims against such Debtor Transferee.

8.    *Consent by the Administrative Agent and the Required Lenders.*  Subject to the terms of this Interim Order (including, without limitation, paragraph 17), the Administrative Agent and the Required Lenders (pursuant to section 2.1(b)(iii) of the Support Agreement (as

8

defined in paragraph 11(d) below)) have consented to the Debtors' proposed use of Prepetition Collateral (including the Cash Collateral).

9.      *Entitlement to Adequate Protection.*  The Administrative Agent and the Lenders are entitled, pursuant to sections 361, 363(c)(2), 363(e) and 552 of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate post-petition diminution in value of the Prepetition Collateral, including without limitation, any such diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of the Cash Collateral (including, without limitation, use of the Cash Collateral for the Carve Out) and the other Prepetition Collateral and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (such diminution in value, the "Adequate Protection Obligations").

10.     *Adequate Protection Claims and Liens.*  As adequate protection, the Administrative Agent and the Lenders are hereby granted the following claims, liens, rights and benefits:

(a)      Section 507(b) Claim.  The Adequate Protection Obligations due to the Administrative Agent and the Lenders shall constitute joint and several superpriority claims against the Debtors as provided in section 507(b) of the Bankruptcy Code, with priority in payment over any and all unsecured claims and administrative expense claims against the Debtors, now existing or hereafter arising, of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 105, 326, 328, 330, 331, 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtors, and any successor

9

trustee or any creditor, in the Debtors' Cases or any subsequent proceedings under the Bankruptcy Code (the "507(b) Claim"), subject and subordinate only to the Carve Out. This Court retains jurisdiction to resolve any dispute with respect to the amount of any 507(b) Claims.

(b)    Adequate Protection Liens.  As security for the Adequate Protection Obligations, effective as of the Petition Date and perfected without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the Administrative Agent of any Collateral (as defined below), the following security interests and liens are hereby granted to the Administrative Agent for its own benefit and the benefit of the Lenders (all property identified in clauses (i), (ii), (iii) and (iv) below being collectively referred to as the "Collateral"), subject only to the Carve Out (all such liens and security interests, the "Adequate Protection Liens"):

(i)    First Priority on Unencumbered Property.  Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, non-voidable first priority replacement lien on, and security interest in, all of the Debtors' rights in tangible and intangible assets, including without limitation, all prepetition and post-petition property of the Debtors' estates, and all products and proceeds thereof, whether existing on or as of the Petition Date or thereafter acquired, that is not subject to (x) valid, perfected, non-avoidable and enforceable liens in existence on or as of the Petition Date or (y) valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section

10

546(b) of the Bankruptcy Code (collectively, the "Unencumbered Property"),
including without limitation, any and all unencumbered cash, accounts receivable,
other rights to payment, inventory, general intangibles, contracts, servicing rights,
servicing receivables, securities, chattel paper, owned real estate, real property
leaseholds, fixtures, machinery, equipment, deposit accounts, patents, copyrights,
trademarks, tradenames, rights under license agreements and other intellectual
property, claims and causes of action (including those arising under section 549 of
the Bankruptcy Code), and the proceeds of all of the foregoing, provided that the
Unencumbered Property shall not include the Avoidance Actions, but upon the
entry of the Final Order, the Unencumbered Property shall include, and the
Adequate Protection Liens shall attach to, any proceeds or property recovered in
respect of any Avoidance Action;

      (ii)    <u>Liens Junior to Certain Existing Liens</u>.  Pursuant to sections 361(2)
and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable,
fully-perfected non-voidable junior priority replacement lien on, and security
interest in, all tangible and intangible assets, including without limitation, all
prepetition and post-petition property of the Debtors' estates, and all products and
proceeds thereof, whether now existing or hereafter acquired (other than the
property described in clause (i) or (iii) of this paragraph 10(b)), that is subject to
(x) valid, perfected and unavoidable liens in existence immediately prior to the
Petition Date or (y) valid and unavoidable liens in existence immediately prior to
the Petition Date that are perfected after the Petition Date as permitted by section

11

546(b) of the Bankruptcy Code, which valid, perfected and unavoidable liens are senior in priority to the security interests and liens in favor of the Administrative Agent and the Lenders;

      (iii)   <u>Liens Senior to Certain Existing Liens</u>.  Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected non-voidable priming lien on, and security interest in, all tangible and intangible assets, including without limitation, all prepetition and post-petition property of the Debtors' estates, and all products and proceeds thereof, whether now existing or hereafter acquired; <u>provided</u> that such liens and security interests shall not prime (x) any valid, perfected and unavoidable liens and security interests in existence immediately prior to the Petition Date that are held by or granted to any person other than the Administrative Agent or (y) valid and unavoidable liens and security interests in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code and that are held by or granted to any person other than the Administrative Agent;

      (iv)   The Adequate Protection Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (B) any lien or security interest arising after the Petition Date, subject to the Carve Out, or (ii) except as otherwise set forth in clauses (i), (ii) and (iii) of

01:13446551.2

this paragraph 10(b), subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise;

(c)    For purposes hereof, the "Carve Out" shall mean the following: (i) all statutory fees required to be paid by the Debtors to the Clerk of the Bankruptcy Court and to the Office of the U.S. Trustee under section 1930(a) of title 28 of the United States Code (irrespective of whether the Carve Out Trigger Notice (as defined below) has been delivered); (ii) the reasonable fees and expenses up to $50,000 incurred by a trustee appointed in the Debtors' cases under section 726(b) of the Bankruptcy Code (irrespective of whether the Carve Out Trigger Notice has been delivered); (iii) all accrued and unpaid reasonable fees, disbursements, costs, and expenses (the "Professional Fees") incurred by professionals or professional firms retained by the Debtors or their estates pursuant to section 327, 328, or 363 of the Bankruptcy Code and any statutory committee (the "Committee") appointed in the Debtors' Cases pursuant to section 1103 of the Bankruptcy Code (collectively, the "Professionals"), which Professional Fees (x) are allowed by this Court at any time and (y) were incurred at any time before or on the first Business Day following delivery by the Administrative Agent to counsel to the Debtors identified in paragraph 30, the U.S. Trustee, and counsel to any Committee (if any) of a written notice (the "Carve Out Trigger Notice"), which notice may be delivered at any time following the occurrence and during the continuation of any Termination Event (as defined in paragraph 12 below), stating that the Carve Out Cap (as defined below) has been invoked; and (iv) the Professional Fees allowed by this Court in an aggregate amount not exceeding $3 million (the "Carve Out Cap"), which Professional Fees are  incurred by the Professionals after the first Business Day following delivery by the Administrative Agent of the Carve Out Trigger Notice in

01:13446551.2

accordance with the immediately preceding clause (iii); provided that: (w) the Carve Out shall not be available to pay any Professional Fees incurred by any party, including the Debtors or any Committee or any Professionals engaged thereby, in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the Administrative Agent or the Lenders, it being understood that up to an aggregate of $50,000 shall be made available to any Committee for investigation costs, as described in paragraph 22 below; (x) so long as a Carve Out Trigger Notice shall not have been delivered, the Carve Out shall not be reduced by the payment of Professional Fees allowed at any time by this Court and payable under sections 328, 330 and 331 of the Bankruptcy Code; provided that after delivery of a Carve Out Trigger Notice in accordance with clause (iii) above, the amount in (or to be deposited to establish) the Carve Out Account (as defined below) shall be reduced on a dollar for dollar basis for Professional Fees allowed by this Court that are paid to the Professionals and the Carve Out Account shall not be replenished for any such amounts so paid; (y) each Professional shall fully utilize any remaining retainers held by such Professional before such Professional may be paid from the Carve Out Account; and (z) without prejudice to the rights of the Professionals or the Debtors to contest any such objection, nothing in this Interim Order shall be construed to impair the ability of any party to object to any fees, expenses, reimbursements, or compensation sought by any such Professionals.  Upon receipt by the Debtors of a Carve Out Trigger Notice and, in any event, prior to making any distribution of Collateral, Prepetition Collateral or the proceeds thereof to the Administrative Agent or the Lenders, the Debtors shall promptly deposit an amount equal to the Professional Fees incurred and unpaid as of such date plus an amount equal to the Carve Out Cap in a segregated account (the "Carve Out Account") to

14

be utilized solely for the payment of Professional Fees; provided, however, that the Debtors'

depositing such monies into the Carve Out Account shall not impair the right of any party to

object to the reasonableness of any such fees or expenses to be paid by the Debtors' estates. The

Debtors' deposit of any amount into the Carve Out Account shall not reduce the amount of the

Carve Out or limit the Professionals eligible to be paid therefrom. As described above, the Carve

Out shall be senior to all liens and claims securing the Obligations and the Adequate Protection

Obligations (including, without limitation, the 507(b) Claims, the Adequate Protection Liens,

and any and all other forms of adequate protection, liens, security interests and administrative,

superpriority or other claims granted pursuant to this Interim Order).

      11.    *Additional Adequate Protection.* As additional adequate protection,

      (a)    Payments: The Debtors are authorized and directed to pay to the

Administrative Agent: (i) within five (5) Business Days following the entry of this Interim

Order, any accrued and unpaid prepetition interest, fees and costs (including, without limitation,

interest on Loans, interest on terminated Swap Agreements, breakage costs, and accrued fees

owing to the Administrative Agent), in each case, calculated based on the applicable non-default

rate set forth in the Loan Agreement and the other applicable documents; (ii) on the last Business

Day of each calendar month after the entry of this Interim Order (or, with respect to accrued and

unpaid post-petition interest on Loans, on the dates when otherwise due and payable in

accordance with the terms of the Loan Agreement), all accrued and unpaid post-petition interest,

fees and costs due and payable under the Loan Agreement (including, without limitation, interest

on Loans, interest on terminated Swap Agreements (subject to the Debtors' rights, if any, to

dispute whether such amounts are due and payable pursuant to the terms of the applicable Swap

15

Agreement), breakage costs and accrued fees owing to the Administrative Agent), in each case, calculated based on the applicable non-default rate set forth in the Loan Agreement or the other applicable documents; and (iii) all mandatory prepayments on the date such payments become due in accordance with the Loan Agreement (determined without giving effect to the acceleration of the Obligations as a result of the commencement of the Cases).

(b)    <u>Fees and Expenses</u>:  The Debtors are authorized and directed to pay within fifteen (15) days of presentment of an invoice describing in customary detail (redacted for privilege and work product) the fees, costs and expenses incurred or accrued by the Administrative Agent including without limitation, the reasonable fees and expenses of legal counsel (including local counsel), financial advisors and other professionals hired by or on behalf of the Administrative Agent.  None of the fees, costs, expenses or other amounts payable pursuant to this paragraph shall be subject to separate approval by this Court (but this Court shall resolve any dispute as to the reasonableness of any such fees, costs and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto; <u>provided, however</u>, that the Debtors shall submit copies of the Administrative Agent's legal counsels' and financial advisor's invoices to the U.S. Trustee and the Committee (if any), and the Debtors, the U.S. Trustee and the Committee (if any) shall have ten (10) days following their receipt of such invoices to object to the reasonableness of the fees and expenses included in any such invoice.  Any such objection must describe with particularity the items or categories of fees and expenses that are the subject of the objection and provide the specific basis for the objection to each such item or category.  If any such objection is not resolved within ten (10) days after such objection is interposed, a hearing with respect thereto shall be conducted at

16

the next regularly-scheduled omnibus hearing in the Cases, <u>provided</u> <u>that</u> the Debtors shall pay

any undisputed portion of such fees, costs and expenses within fifteen (15) days of the initial

presentment of such invoice.

(c)    <u>Other Covenants</u>:  The Debtors shall maintain their cash management

arrangements in a manner consistent with that described in the applicable "first-day" order.  The

Debtors shall not use, sell or lease any material assets outside the ordinary course of business, or

seek authority of this Court to do any of the foregoing, without prior consultation with the

Administrative Agent at least five (5) Business Days prior to the date on which the Debtors seek

the authority of this Court for such use, sale or lease.

(d)    <u>Reporting</u>:  The Debtors shall comply with the reporting requirements set

forth in Sections 5.01, 5.02 and 5.03 of the Loan Agreement and Section 5.8 of the Support and

Limited Waiver Agreement, dated as of December 5, 2012, by and among the Debtors, the

Administrative Agent, JPMorgan Chase Bank, N.A. in its capacity as administrative agent under

the Loan Agreement and the banks and other financial institutions and entities from time to time

party thereto (as amended, supplemented or otherwise modified, the "<u>Support Agreement</u>").

12.    *Termination.*  The Debtors' right to use the Cash Collateral pursuant to this

Interim Order shall automatically terminate (the date of any such termination, the "<u>Termination</u>

<u>Date</u>") without further notice or court proceeding on the earliest to occur of (i) ten (10) Business

Days after the date that is forty (40) days after the Petition Date (unless such period is extended

by mutual agreement of the Administrative Agent and the Debtors) if the Final Order has not

been entered by this Court on or before such date and (ii) the occurrence of any of the events set

forth in clauses (a) through (g) below (unless waived by the Administrative Agent and the

17

Required Lenders) (the events set forth in clauses (a) through (g) below are collectively referred to herein as the "Termination Events"):

(a)    Failure of the Debtors to make any payment under this Interim Order to the Administrative Agent or the Lenders within three (3) Business Days after such payment becomes due (other than payments required pursuant to clauses (i) and (iii) of paragraph 11(a) of this Interim Order, which payments shall be made as required therein);

(b)    Other than with respect to clauses (a), (d), (f) and (g) of this paragraph 12, failure of the Debtors to: (i) comply with any material provision of this Interim Order; or (ii) comply with any other covenant or agreement specified in this Interim Order (other than those described in clause (i) above) in any material respect and such failure to comply with any such other covenant or agreement shall continue unremedied for five (5) Business Days following notice by the Administrative Agent of such failure;

(c)    The Debtors shall create, incur or suffer to exist any post-petition liens or security interests other than: (i) those granted pursuant to this Interim Order; (ii) carriers', mechanics', warehousemen's, repairmen's or other similar liens arising in the ordinary course of business; (iii) pledges or deposits in connection with workers' compensation, unemployment insurance and other social security legislation; (iv) deposits to secure the payment of any post-petition statutory obligations, performance bonds and other obligations of a like nature incurred in the ordinary course of business; (v) any other junior liens or security interests that the Debtors are permitted to incur under the Loan Agreement or any other Loan Document; and (vi) any other Permitted Encumbrance (other than the Permitted Encumbrance specified in clause (e) of the definition thereof);

18

(d)     An order shall be entered reversing, amending, supplementing, staying, vacating or otherwise modifying this Interim Order without the Administrative Agent's consent;

(e)     The Debtors shall create, incur or suffer any other claim which is *pari passu* with or senior to the 507(b) Claim of the Administrative Agent and the Lenders;

(f)     A filing by any Debtor of any motion, pleading, application or adversary proceeding challenging the validity, enforceability, perfection or priority of the liens securing the Obligations or asserting any other cause of action against and/or with respect to the Obligations, the prepetition liens securing such Obligations, the Administrative Agent or any of the Lenders (or if the Debtors support any such motion, pleading, application or adversary proceeding commenced by any third party); or

(g)     The occurrence of a "Termination Date" under, and as such term is defined in, the Support Agreement.

13.     *Remedies upon the Termination Date.*  The Debtors shall promptly provide notice to the Administrative Agent (with a copy to counsel for the Committee (if any) and the U.S. Trustee) of the occurrence of any Termination Event. Upon the occurrence of the Termination Date, (a) the Adequate Protection Obligations, if any, shall become due and payable and (b) the Administrative Agent and each Lender, upon five (5) Business Days written notice to the counsel to the Debtors identified in paragraph 30 and the U.S. Trustee, may (i) setoff amounts in any account of the Debtors maintained with the Administrative Agent or such Lender, respectively, to the extent necessary for payment of the Adequate Protection Obligations and (ii) exercise the rights and remedies available under the Loan Documents, this Interim Order or applicable law, including without limitation, foreclosing upon and selling all or a portion of the Prepetition

19

Collateral or Collateral granted to the Administrative Agent in order to collect the Adequate

Protection Obligations.  The automatic stay under section 362 of the Bankruptcy Code is hereby

deemed modified and vacated to the extent necessary to permit such actions.  In any hearing

regarding any exercise of rights or remedies, the only issue that may be raised by any party in

opposition thereto shall be whether, in fact, the Termination Date shall have occurred, and each

of the Debtors hereby waives any right to seek relief, including without limitation, under section

105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the

rights and remedies of the Administrative Agent and the Lenders set forth in this Interim Order

or the Loan Documents.  The delay or failure of the Administrative Agent and the Lenders to

exercise rights and remedies under the Loan Documents or this Interim Order shall not constitute

a waiver of their respective rights hereunder, thereunder or otherwise, unless any such waiver is

pursuant to a written instrument executed in accordance with the terms of the Loan Documents.

The Administrative Agent shall be entitled to apply the payments or proceeds of the Prepetition

Collateral  and the Collateral in accordance with the provisions of the Loan Documents, and in

no event shall the Administrative Agent or any of the Lenders be subject to the equitable doctrine

of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral, the

Collateral or otherwise.  Notwithstanding the occurrence of the Termination Date or anything

herein, all of the rights, remedies, benefits and protections provided to the Administrative Agent

and the Lenders under this Interim Order shall survive the Termination Date.

        14.    *Limitation on Charging Expenses against Collateral*.  Subject to and effective

upon entry of the Final Order under Bankruptcy Rule 4001, except to the extent of the Carve

Out, no expenses of administration of the Cases or any future proceeding that may result

therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Prepetition Collateral or the Collateral, the Administrative Agent or the Lenders pursuant to sections 105(a) or 506(c) of the Bankruptcy Code or any similar principle of law or equity, without the prior written consent of the Administrative Agent and no such consent shall be implied from any other action, inaction, or acquiescence by the Administrative Agent or the Lenders.

15.     *Payments Free and Clear.*  Any and all payments or proceeds remitted to the Administrative Agent on behalf of the Lenders pursuant to the provisions of this Interim Order or any subsequent order of this Court shall be irrevocable, received free and clear of any claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtors) or 552(b) of the Bankruptcy Code.

16.     *Section 552(b) of the Bankruptcy Code.*  The Administrative Agent and the Lenders shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and, subject to and effective upon entry of the Final Order, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Administrative Agent and the Lenders with respect to (i) proceeds, products, offspring or profits of any of the Prepetition Collateral, including the Cash Collateral or (ii) the extension of the Adequate Protection Liens to cover proceeds of the Prepetition Collateral.

17.     *Reservation of Rights of the Administrative Agent and the Lenders.* Notwithstanding any other provision hereof, the grant of adequate protection to the Administrative Agent and the Lenders pursuant hereto is without prejudice to the right of the

21

Administrative Agent to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, and without prejudice to the right of the Debtors or any other party in interest to contest any such modification. Nothing herein shall be deemed to waive, modify or otherwise impair the respective rights of the Administrative Agent and the Lenders under the Guarantee and Collateral Agreement or the other Loan Documents or under equity or law, and the Administrative Agent and the Lenders expressly reserve all of their respective rights and remedies whether now existing or hereafter arising under the Guarantee and Collateral Agreement, the Loan Documents and/or equity or law in connection with all Termination Events and Defaults and Events of Default (each as defined in the Loan Agreement, and whether arising prior to or after the Petition Date). Except as expressly provided herein, nothing contained in this Interim Order (including without limitation, the authorization to use any Cash Collateral) shall have the effect of, or shall be construed as having the effect of, amending or waiving any covenant, term or provision of the Loan Agreement or any other Loan Document, or any rights or remedies of the Administrative Agent or the Lenders thereunder, including without limitation, any right to argue that failure to strictly comply with any such covenant, term or provision during the course of the Cases or that any use of Cash Collateral permitted or contemplated hereby constitutes a Default or Event of Default that is not subject to cure under section 1124 of the Bankruptcy Code or otherwise despite any consent or agreement contained herein.

18.    *Reservation of Rights.*  The entry of this Interim Order and the grant of adequate protection to the Administrative Agent and the Lenders pursuant to the terms hereof shall be without prejudice to the rights of the Debtors to, following the occurrence of the Termination

01:13446551.2

Date, seek authority to use the Cash Collateral without the consent of the Lenders and the

Administrative Agent, and the Lenders and the Administrative Agent reserve all rights with

respect to contesting any such motion or request by the Debtors or any other person.

19.    *Perfection of Adequate Protection Liens.*

(a)    The Administrative Agent is hereby authorized, but not required, to file or

record financing statements, intellectual property filings, mortgages, notices of lien or similar

instruments in any jurisdiction in order to validate and perfect the liens and security interests

granted to it hereunder.  Whether or not the Administrative Agent shall, in its sole discretion,

choose to file such financing statements, intellectual property filings, mortgages, notices of lien

or similar instruments, such liens and security interests shall be deemed valid, perfected,

allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of

the date of entry of this Interim Order.  If the Administrative Agent determines to file any

financing statements, notice of liens or similar instruments, the Debtors will cooperate and assist

in any such filings as reasonably requested by the Administrative Agent, and the automatic stay

shall be modified to allow such filings.

(b)    A certified copy of this Interim Order may, in the discretion of the

Administrative Agent be filed with or recorded in filing or recording offices in addition to or in

lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing

offices are hereby authorized to accept such certified copy of this Interim Order for filing and

recording; provided, however, that the Debtors shall reimburse the Administrative Agent or its

respective designee for the payment of any stamp, intangibles, recording or similar tax.

23

01:13446551.2

(c)    The Debtors shall execute and deliver to the Administrative Agent all such agreements, financing statements, instruments and other documents as the Administrative Agent may reasonably request to evidence, confirm, validate or perfect the Adequate Protection Liens.

(d)    Effective upon entry of a Final Order, any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other Collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code. Any such provision shall have no force and effect with respect to the granting of Adequate Protection Liens on such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor in favor of the Administrative Agent and the Lenders in accordance with the terms of the Loan Documents or this Interim Order.

20.    *Preservation of Rights Granted Under this Interim Order.*

(a)    Except as expressly provided in this Interim Order, no claim or lien having a priority senior to or *pari passu* with those granted by this Interim Order to the Administrative Agent and the Lenders shall be granted or allowed, and the Adequate Protection Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

24

01:13446551.2

(b)       Notwithstanding any order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise entered at any time, (x) the 507(b) Claims, the other administrative claims granted pursuant to this Interim Order and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all Adequate Protection Obligations shall have been paid and satisfied in full (and such 507(b) Claims, the other administrative claims granted pursuant to this Interim Order and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); and (y) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) above.

(c)       If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect: (i) the validity, priority or enforceability of any Adequate Protection Obligations incurred prior to the actual receipt of written notice by the Administrative Agent of the effective date of such reversal, stay, modification or vacatur; or (ii) the validity, priority or enforceability of the Adequate Protection Liens.  Notwithstanding any such reversal, stay, modification or vacatur, any use of the Prepetition Collateral (including the Cash Collateral) or any Adequate Protection Obligations incurred by the Debtors hereunder, as the case may be, prior to the actual receipt of written notice by the Administrative Agent of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Interim Order, and the Administrative Agent and the Lenders shall be entitled to all of the rights, remedies, privileges and benefits granted in section 363(m) of the Bankruptcy Code with respect to all uses of the Prepetition Collateral (including the Cash Collateral) and all Adequate Protection Obligations.

25

(d)     The adequate protection payments made pursuant to this Interim Order shall not be subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance in the Cases or any subsequent chapter 7 cases (other than a defense that the payment has actually been made).

(e)     Except as expressly provided in this Interim Order, the Adequate Protection Obligations, the 507(b) Claims and all other rights and remedies of the Administrative Agent and the Lenders granted by the provisions of this Interim Order shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Cases or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization in any of the Cases (other than the Plan (as defined in the Support Agreement)) and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining Adequate Protection Obligations.  The terms and provisions of this Interim Order shall continue in the Cases, in any successor cases if the Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the Adequate Protection Liens, the Section 507(b) Claims, the other administrative claims granted pursuant to this Interim Order, and all other rights and remedies of the Administrative Agent and the Lenders granted by the provisions of this Interim Order shall continue in full force and effect until all Adequate Protection Obligations are indefeasibly paid in full in cash, except as otherwise provided for in the Plan (as defined in the Support Agreement).

21.     *Effect of Stipulations on Third Parties.*  As a result of the Debtors' review of the Loan Documents and the facts related thereto, the Debtors have made certain agreements and

01:13446551.2

acknowledgments as set forth in paragraph 5 above and shall have no right to file a complaint

pursuant to Bankruptcy Rule 7001 or otherwise, or any other pleading asserting a claim or cause

of action arising out of or related to the Loan Documents or any transactions or course of

conduct related thereto.  The stipulations and admissions contained in this Interim Order,

including without limitation, in paragraph 5 of this Interim Order, shall be binding upon the

Debtors and any successor thereto in all circumstances.  The stipulations and admissions

contained in this Interim Order, including without limitation, in paragraph 5 of this Interim

Order, shall be binding upon all other parties in interest, including any chapter 7 or chapter 11

trustee appointed or elected for any of the Debtors (a "Trustee"), unless (a) the Committee (if

any) or any other party in interest (including any Trustee), in each case, with requisite standing,

has duly filed an adversary proceeding (subject to the limitations contained herein, including

without limitation, in paragraph 22) challenging the validity, enforceability, priority or extent of

the Obligations or the liens on the Prepetition Collateral securing the Obligations or otherwise

asserting or prosecuting any Avoidance Actions or any other claims, counterclaims or causes of

action, objections, contests or defenses (collectively, the "Claims and Defenses") against the

Administrative Agent or any of the Lenders or their respective agents, affiliates, subsidiaries,

directors, officers, representatives, attorneys or advisors in connection with any matter related to

the Obligations or the Prepetition Collateral by no later than the date that is the earlier of (x) the

later of (i) in the case of any such adversary proceeding filed by a party in interest with requisite

standing other than the Committee, seventy-five (75) days after the date of entry of this Order,

(ii) in the case of any such adversary proceeding filed by the Committee (if any), sixty (60) days

after the appointment of the Committee (if any), and (iii) any such later date agreed to in writing

01:13446551.2

by the Administrative Agent in its sole and absolute discretion and (y) the last day for filing

objections to confirmation of the plan of reorganization filed by the Debtors in the Cases on the

Petition Date (the time period established by the earlier of the foregoing clauses (x) and (y), the

"Challenge Period") and (b) an order is entered by a court of competent jurisdiction and becomes

final and non-appealable in favor of the plaintiff sustaining any such challenge or claim in any

such duly filed adversary proceeding; provided that, as to the Debtors, all such Claims and

Defenses are hereby irrevocably waived and relinquished as of the Petition Date.  If no such

adversary proceeding is timely filed prior to the expiration of the Challenge Period, without

further order of this Court; (x) the Obligations shall constitute allowed claims, not subject to

counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in

the Cases and any subsequent chapter 7 case; (y) the Administrative Agent's liens on the

Prepetition Collateral shall be deemed to have been, as of the Petition Date, and to be, legal,

valid, binding, perfected and of the priority specified in paragraph 5(d), not subject to defense,

counterclaim, recharacterization, subordination or avoidance; and (z) the Obligations, the

Administrative Agent's liens on the Prepetition Collateral and the Lenders shall not be subject to

any other or further challenge by the Committee (if any) or any other party in interest, and any

such Committee or party in interest shall be enjoined from seeking to exercise the rights of the

Debtors' estates, including without limitation, any successor thereto (including, without

limitation, any estate representative or a Trustee, whether such Trustee is appointed or elected

prior to or following the expiration of the Challenge Period).  If any such adversary proceeding is

timely filed prior to the expiration of the Challenge Period, the stipulations and admissions

contained in this Interim Order, including without limitation, in paragraph 5 of this Interim

Order, shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any Committee and any other Person, including any Trustee, except as to any such findings and admissions that were successfully challenged in such adversary proceeding. Nothing in this Interim Order vests or confers on any Person, including a Committee (if any) or Trustee, standing or authority to pursue any cause of action belonging to the Debtors or their estates.

      22.     *Limitation on Use of Collateral.*  The Debtors shall use the proceeds of the Prepetition Collateral (including the Cash Collateral) solely as provided in this Interim Order. Notwithstanding anything herein or in any other order of this Court to the contrary, no Collateral, Prepetition Collateral (including the Cash Collateral), the Carve Out or any other assets of the Debtors' estates now or hereafter acquired may be used to: (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the Loan Documents, or the liens or claims granted under this Interim Order or the Loan Documents; (b) assert any Claims and Defenses against the Administrative Agent and the Lenders or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors; (c) seek to modify any of the rights granted to the Administrative Agent and the Lenders hereunder, or (d) pay any amount on account of any claims arising prior to the Petition Date unless such payments are approved by an order of this Court without objection from the Administrative Agent, provided that, notwithstanding anything to the contrary herein, no more than an aggregate of $50,000 of the Prepetition Collateral (including the Cash Collateral), the Collateral or the Carve Out may be used by any Committee to investigate the validity, enforceability or priority of the Obligations or the Administrative Agent's liens on the

29

Prepetition Collateral or investigate any Claims and Defenses or other causes action against the Administrative Agent or any of the Lenders.

23.    *Asset Sales.*  The proceeds of any sale, assignment or disposition of any Prepetition Collateral or Collateral under sections 363 or 365 of the Bankruptcy Code shall be applied against the Obligations in accordance with the terms of the Loan Agreement and the other Loan Documents.

24.    *Binding Effect; Successors and Assigns.*  The provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in the Cases, including without limitation, the Administrative Agent, the Lenders, any Committee and the Debtors and their respective successors and assigns (including any Trustee hereinafter appointed or elected for the estates of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the Administrative Agent, the Lenders and the Debtors and their respective successors and assigns, provided that, except to the extent expressly set forth in this Interim Order, the Administrative Agent and the Lenders shall have no obligation to permit the use of the Prepetition Collateral (including the Cash Collateral) or extend any financing to any Trustee or similar responsible person appointed for the estate of any Debtor.

25.    *Limitation of Liability.*  In permitting the use of the Prepetition Collateral (including the Cash Collateral) or in exercising any rights or remedies as and when permitted pursuant to this Interim Order, subject to entry of the Final Order, the Administrative Agent and the Lenders shall not be deemed to be in control of the operations of the Debtors or to be acting

30

as a "responsible person" or "owner or operator" with respect to the operation or management of

the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive

Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq. as

amended, or any similar federal or state statute).  Furthermore, nothing in this Interim Order shall

in any way be construed or interpreted to impose or allow the imposition upon the

Administrative Agent or the Lenders of any liability for any claims arising from the prepetition

or post-petition activities of any of the Debtors and their respective affiliates (as defined in

section 101(2) of the Bankruptcy Code).

26.    *No Impact on Certain Contracts/ Transactions.*  No rights of any Person under

sections 555, 556, 559, 560 and 561 of the Bankruptcy Code shall be affected by the entry of this

Interim Order as to any contract or transaction of the kind listed in such sections of the

Bankruptcy Code.

27.    *Effectiveness.*  This Interim Order shall constitute findings of fact and conclusions

of law and shall take effect immediately upon entry hereof, and there shall be no stay of

execution of effectiveness of this Interim Order. To the extent that any finding of fact shall be

determined to be a conclusion of law it shall be so deemed and vice versa.

28.    *Controlling Effects of Interim Order.*  To the extent any provision of this Interim

Order conflicts or is inconsistent with any provision of the Motion, the provisions of this Interim

Order shall control.

29.    *Proofs of Claim.*  Notwithstanding anything herein to the contrary or in any other

order of this Court, neither the Administrative Agent nor any other Lender will be required to file

proofs of claim in any of the Cases or successor cases, and the Debtors' stipulations in paragraph

31

5 herein shall be deemed to constitute a timely filed proof of claim. Any order entered by this Court in relation to the establishment of a bar date for any claim (including without limitation administrative claims) in any of the Cases or successor Cases shall not apply to the Administrative Agent and the Lenders with respect to the Obligations.

30. *Final Hearing.* The Final Hearing is scheduled for April 12, 2013 at 11:00 a.m., prevailing Eastern time, before this Court. The Debtors shall promptly mail copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with this Court and to any Committee. Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections; which objections shall be served upon (a) Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, New York 10006, Attention: Sean A. O'Neal, Esq. and Emily Bussigel, Esq., attorneys for the Debtors, (b) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attention: Pauline K. Morgan and Patrick A. Jackson, local counsel for the Debtors, (c) Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017, Attention: Steve M. Fuhrman, Esq. and Sandy Qusba, Esq., and Richards, Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801, Attention: Mark D. Collins, Esq., attorneys for the Administrative Agent, and (d) the Office of the U.S. Trustee, and shall be filed with the Clerk of the United States Bankruptcy Court, District of Delaware, in each case to allow actual receipt by the foregoing no later than April 5, 2013 at 4:00 p.m., prevailing Eastern time.

01:13446551.2

31.    *Jurisdiction.*  This Court shall retain jurisdiction to enforce the terms of this

Interim Order and to adjudicate any and all matters arising from or related to the interpretation or

implementation of this Interim Order.

Dated:    March 19 2013
          Wilmington, Delaware

                                        Kevin Gross
                                        Chief United States Bankruptcy Judge

33