IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| SUPERMEDIA, INC. et al., | ) | Case No. 13-10545(KG) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| _____ | ) | **Re: Dkt. Nos. 212, 213, 236, & 263** |

## MEMORANDUM OPINION

The Court is ruling on two motions filed by Yellow Pages Photos, Inc. ("YPPI"): (1) the Motion to Compel Assumption or Rejection of Executory Contract (the "Executory Contract Motion") (D.I. 212) and (2) the Motion for Allowance and Payment of Administrative Expense Claim (the "Administrative Claim Motion") (D.I. 213), (collectively, the "Motions").

## FACTS[1]

YPPI is a Florida corporation which produces and licenses copyrighted photographic images. On November 12, 2001, YPPI entered into an agreement (the "Agreement") with Verizon Directories Corp. ("Verizon Directories"), under which YPPI would provide to Verizon Directories a perpetual, royalty free, non-exclusive license to use copyrighted photographic images owned by YPPI (the "License"). Among other terms, the License authorized use of the images for up to 600 Verizon Directories employees. The Agreement's terms, including the schedule of payment, terminated, at the

---

[1] The parties agreed that there are no material facts requiring an evidentiary hearing to resolve the Motions. The Court therefore believes the facts stated in the opinion are uncontested and, instead, is addressing the parties' legal arguments.

latest, on December 31, 2004. However, the License continues to remain in effect. On July 26, 2007, the parties amended the Agreement (the "Amended Agreement")[2] to reflect Verizon Directories' new company name, Idearc Media Corp. ("Idearc"), and alter the use terms of the License. The Amended Agreement also prohibited any transfer of the images without YPPI's authorization. The pertinent provisions of the Agreements are contained in the License and are:

> This license agreement grants certain limited rights to the use of the photographs and images provided to Verizon Directories pursuant to this Agreement. Yellow Pages Photos, Inc. retains all ownership and title rights to the photographs and images. Any and all rights not specifically granted in this agreement are expressly reserved by Yellow Pages Photos, Inc. Yellow Pages Photos, Inc. from this point forward is referred to as YPPI. Stock Photo Compact Disc from this point forward may also be referred to as CD. Download is defined as either copying or saving an image to another form of media other than the CD purchased. Photos hereafter refers to both the terms photograph and image.
>
> Yellow Pages Photos, Inc. grants to Verizon Directories, and Verizon Directories accepts, a perpetual, limited, non-exclusive, fully paid license to use the photographs and images contained in any Compact Disc provided to Verizon Directories pursuant to this Agreement for the purposes contemplated by this Agreement. The photographs and images contained therein and all copyrights and other proprietary rights therein are owned by Yellow Pages Photos, Inc. are protected by United States Copyright Laws and International treaty provisions, and may not be used, reproduced, modified, distributed or transferred except as expressly provided by this Agreement. This license grants neither exclusive nor sole use of the photos, either in a

---

[2] The Court will, where appropriate, refer to the Agreement and Amended Agreement, collectively, as the "Agreements."

> specific region or to a single individual, advertiser, or publishing company. Other publishing companies, individuals or corporations (whether competing or not) within the same market may simultaneously obtain and publish these photos without regard to geographic region.

The Amended Agreement further provides:

> Idearc may not transfer these images to other parties or individual[s] unless authorized by YPPI; provided however, that Idearc is authorized by this Agreement to use the photographs and images in advertising purchased by its customers for inclusion in Idearc's products. All users must be employees or contractors of Idearc.

Idearc filed a Chapter 11 petition in 2009 and emerged as SuperMedia, LLC. As successor to Idearc, SuperMedia was bound by the terms of the License. In 2011, YPPI sent a letter to SuperMedia claiming that SuperMedia breached the agreement by transferring images to a third party, which then transferred the images to yet another entity. SuperMedia responded by stating that the third party was its contractor and the transfer of images was permitted under the Agreement.

On March 18, 2013, SuperMedia filed a prepackaged bankruptcy and the plan was confirmed on April 29, 2013 (the "Confirmed Plan"). The Confirmed Plan assumed all executory contracts that had not been specifically identified for rejection. It did not list the License as a rejected contract. Additionally, the Confirmed Plan preserved "all rights privileges, defenses and obligations" with respect to the License. The Confirmed Plan provided that all property of the estate would vest in the Reorganized Debtor. The Confirmed Plan became effective the day after confirmation.

In the Executory Contract Motion, also filed on May 30, 2013, YPPI asks the court to determine that the License is an executory contract to be assumed by the Reorganized Debtors or compelling assumption or rejection. YPPI also seeks cure and adequate assurance.

YPPI filed the Administrative Claim Motion on May 30, 2013, asserting damages for breach of the License. Specifically, YPPI asserts that SuperMedia exceeded the user restriction by transferring images to third parties without YPPI's authorization both prepetition and post-petition and in excess of the permitted 600 transfers. YPPI argues that because this violation was in furtherance of SuperMedia's ongoing business, the damages constitute an administrative expense as an actual and necessary cost of preserving the estate.

On May 28, 2013, SuperMedia initiated a lawsuit (the "Texas Action") in the United States District Court for the Northern District of Texas (the "Texas District Court"), seeking declaratory relief of the agreement and attorneys fees. The case is currently pending in the Texas District Court. SuperMedia seeks to establish that it did not breach the Agreements.

## DISCUSSION

**Executory Contract Motion**

YPPI argues that the License is an executory contract and, as such, cannot be assigned without YPPI's consent. SuperMedia asserts that the License is not executory

because it has been fully paid and is royalty-free. SuperMedia further asserts that the License is property of the estate and vests in SuperMedia pursuant to the Plan.

The Bankruptcy Code provides for the assumption or rejection of executory contracts. 11 U.S.C. § 365[3]. An executory contract is "a contract under which the obligation of both the bankrupt and the other party to the contract are so far underperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." *In re Exide Techs.*, 607 F.3d 957, 962 (3d Cir. 2010) (quoting *Enter. Energy Corp. v. United States (In re Columbia Gas Sys. Inc.)*, 50 F.3d 233, 239 (3d Cir. 1995)) "Thus, unless both parties have unperformed obligations that would constitute a material breach if not performed, the contract is not executory." *Columbia Gas*, 50 F.3d at 239. "[W]here a single document embraces several distinct agreements, some of which are executory and some of which are fully or substantially performed, only the executory portions of the document are subject to

---

[3] The Trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if -

   (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to any entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment or rights or delegation of duties; and

   (B) such party does not consent to such assumption or assignment.
. . .

11 U.S.C. § 365(c).

rejection." *In re Mirant Corp.*, 318 B.R. 100, 104 (N.D. Tex. 2004) (quoting *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741-42 (5th Cir. 1996)).

Certain intellectual property agreements may constitute executory contracts. *See In re CellNet Data Sys., Inc.*, 327 F.3d 242 (3d Cir. 2003) (rejecting, as an executory contract, an intellectual property license granted by the debtor that entitled the debtor to monthly royalties paid by the licensee for use of the intellectual property); *Encino Bus. Mgmt., Inc. v. Prize Frize, Inc. (In re Prize Frize, Inc.)*, 32 F.3d 426 (9th Cir. 1994) (rejecting an intellectual property licensing agreement as an executory contract where the licensee was still under the obligation to make license fee and royalty payments to the debtor); *In re Golden Books Family Entm't, Inc.*, 269 B.R. 300 (D. Del. 2001) (noting that courts generally have found intellectual property license agreements to be executory contracts); *In re Access Beyond Techs., Inc.*, 237 B.R. 32, 43 (Bankr. D. Del. 1999) (holding that a cross-license agreement was an executory contract because each party had the material duty not to sue the other for infringement); *In re Patient Educ. Media, Inc.*, 210 B.R. 237, 241 (Bankr. S.D.N.Y. 1997) (noting that bankruptcy courts generally treat nonexclusive intellectual property licenses as executory contracts). However "the various negative covenants, restrictions on use and conditions subsequent customarily found in intellectual property licenses may not be considered sufficiently material to subject the license to rejection." Balfous, Jonathan, *Exide Inside Out: New Third Circuit Decision Preserves Trademark Licensee's Rights Following Licensor's Rejection Under Bankruptcy Code § 365* 31 CAL. BANKR. J. 523, 524 (2010). *See also In re Superior Air*

*Parts, Inc.*, 486 B.R. 728, 734 (Bankr. N.D. Tex. 2012) (noting that the parties stipulated that a perpetual intellectual property license was not an executory contract). A restriction on use is a condition precedent as opposed to a material obligation. *Exide*, 607 F.3d at 963 (citing *Columbia Gas*, 50 F.3d at 241). Additionally, where the payment of money is the only remaining performance, a contract is not executory. *In re Placid Oil Co.*, 72 B.R. 135, 138 (Bankr. N.D. Tex. 1987).

In determining whether a contract is executory, courts must look to whether material unperformed obligations existed on both sides at the time of the bankruptcy petition filing. *Exide*, 607 F.3d at 962. Courts look to the principles of contract interpretation under relevant non bankruptcy law to determine the existence of an obligation that would constitute a material breach. *Exide*, 607 F.3d at 962. Whether a breach is material is generally a question of fact. *Fedgess Shopping Ctrs., Ltd. v. MNC SSP, Inc.*, 2007 WL 4387337, at *3 (Tex. App. Dec. 18, 2007); *Quicksilver Res., Inc. v. Eagle Drilling, L.L.C.*, 2009 WL 1312598, at *10 (S.D. Tex. May 9, 2009). Under Texas law, which governs the Agreement, a "material breach is one that deprives the non-breaching party of the benefit of its bargain." *United States v. Davis*, 393 F.3d 540, 546-47 (5th Cir. 2004). *See also Berg v. Wilson*, 353 S.W.3d 166, 179 (Tex. 2011) (defining material breach as the "previous failure to comply with a material obligation of the same agreement."). The degree of a breach's materiality is measured by "the extent to which the nonbreaching party will be deprived of the benefit that it could have reasonably

anticipated from full performance." *Prodigy Commc'n Corp. v. Agric. Excess & Surplus. Ins. Co.*, 288 S.W.3d 374, 378 (Tex. 2009).

YPPI has not specified the "material unperformed obligation" under the Agreements, which would cause the Court to deem the Agreement executory. The license is "fully paid" and "royalty free." YPPI does not sufficiently or credibly distinguish *Exide* which clearly stands for the legal principle that without at least one material unperformed obligation, *i.e.*, that would qualify as a material breach if not performed, the Agreement is not executory. The use and transfer restrictions contained in the Agreement are not affirmative obligations. They are conditions rather than obligations. *See*, *e.g.*, *Gencor Indus. v. CMI Terex Corp.* (*In re Gencor Indus.*) 298 B.R. 902, 912 (Bankr. M.D. Fla. 2003).

YPPI's emphasis on two cases to support its arguments are also misplaced. In *In re Patient Educ. Media, Inc.*, 210 B.R. 237, 241 (Bankr. S.D.N.Y. 1997), the court "assume[d] without deciding" that a non-exclusive copyright license satisfied "the threshold criteria for executoriness." Thus, the *Patient Education* court did not decide the issue. The second case, *In re Golden Books Family Entertainment, Inc.*, 269 B.R. 300, 308-09 (D.Del. 2001), does not control the present case. The court did hold that the non-exclusive copyright licenses were executory contracts. However, the court's decision preceded and was inconsistent with *Exide*.

Here, YPPI granted the License under the Agreement which expired on December 31, 2004 and makes no mention of an extension of the term. The License, by its own

terms, does not provide for its expiration. On July 16, 2007, the parties executed an amendment to the Agreement and License. The License grants restricted use of YPPI's images, but the Agreement and Amended Agreement place no affirmative obligations on YPPI. For a contract to be executory, there must be unperformed obligations on behalf of both parties. The Agreement, as amended, does not provide, nor does YPPI allege any obligations SuperMedia has yet to perform. Accordingly, the License is not an executory contract.

Additionally, the Agreement, during its term, required YPPI to provide images to Verizon Directories in exchange for Verizon Directories making payments in accordance with an attached schedule. As delivery of the images and the payments were completed nearly ten years ago, the parties have received the benefit of their bargain. As the License is not an executory contract, the Executory Contract Motion is denied.

Reading YPPI's submissions, it becomes clear that the executory versus non-executory issue is secondary and, to some extent, is subsumed by the Administrative Claim Motion. The thrust of the Motions is YPPI's assertion that it is entitled to damages for SuperMedia's breach of the Agreements and the License. YPPI writes that it will be made whole if it receives:

> . . .information to allow YPPI to determine the extent to which the debtor has violated the terms of the License and (ii) the debtor provides a prompt cure of such violation in the form of payment totaling the aggregate amounts set forth in YPPI's proof of claim and its Motion for Allowance and Payment of Administrative Expense Claim, or such other amount as the parties may agree upon.

YPPI's Objection to Assumption or, in the Alternative, Demand for Cure Payment in Connection with Assumption of Executory Contract (D.I. 209) at 7-8.

Accordingly, the Court will now turn to YPPI's Administrative Claim Motion.

**Administrative Claim Motion  - Abstention**

YPPI filed the Administrative Claim Motion asserting that SuperMedia violated the restrictions under the License both prepetition and post-petition and that YPPI is entitled to various monetary remedies. SuperMedia argues that the Court should abstain from hearing YPPI's administrative claim request because all asserted claims are the subject of a declaratory judgment action, *i.e.*, the Texas Action, brought by SuperMedia and pending in the Northern District of Texas.  Alternatively, SuperMedia argues that the administrative claim request should be denied because YPPI cannot satisfy the requirements of an administrative expense under section 503(b) of the Bankruptcy Code.

Under certain circumstances not applicable here, bankruptcy courts are required to abstain from hearing a matter. 28 U.S.C. § 1334(c)(1). Additionally, bankruptcy courts may permissively abstain from hearing proceedings that include:

> (1) matters in which difficult, uncertain issues of state law or those in which the state has a unique interest are presented; (2) matters in which the proceeding has been removed from state court and/or there is a parallel state court action pending; (3) the proceedings principally involve claims asserted by or against non-debtors; and (4) matters in which some other truly extraordinary aspect is present.

*In re Direct Response Media, Inc.*, 466 B.R. 626, 658-59 (Bankr. D. Del. 2012) (internal citations omitted). In determining whether to permissively abstain from hearing a matter, courts consider:

> (1) the effect or lack thereof on the efficient administration of the estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted 'core' proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence of "non-debtor parties."

*Direct Response*, 466 B.R. at 659 (citing *In re LaRoche Indus., Inc.*, 312 B.R. 249 (Bankr. D. Del. 2004)).

The Court, somewhat reluctantly but confident that is appropriate under the circumstances, will abstain from adjudicating the Administrative Claim Motion, yielding to the Texas District Court to proceed with the identical issues. The Court's reluctance stems from the facts that: (1) SuperMedia chose this forum for its bankruptcy case and compelled creditors, including YPPI, to seek relief from this Court, (2) the bankruptcy case was already pending when SuperMedia filed the Texas Action, and (3) it is clearly a function of the bankruptcy court to determine claims issues. In addition, only permissive abstention applies and, as such, the decision is subject to the Court's discretion.

For the reasons which follow, the Court is exercising its discretion to abstain for the following reasons:

1.  The issues the Court would be confronting are breach of contract and copyright law. These are not bankruptcy issues.

2.  The Agreements provide that Texas law controls and the parties selected Texas as the forum to resolve any disputes.[4]

3.  The Confirmed Plan provides for payment of all claims. Therefore, the outcome of the dispute will have no impact on the bankruptcy estate or other claimants and YYPI's right to collect any judgment will not be impaired.

4.  The Texas District Court will be able to issue a final judgment. It is unclear whether the Court has the authority to do likewise since SuperMedia unabashedly proclaimed that it will not consent to the Court going beyond issuing a report and recommendation to the Delaware District Court. In addition, SuperMedia is entitled to a jury trial which this Court cannot provide. *In re Fruit of the Loom*, 407 B.R. 593, 601 (Bankr.D.Del. 2009).

5.  The Administrative Claim Motion is limited to the post-petition, 43 day period during which the case was still pending. The Texas District Court has authority to issue a final judgment on the entirety of YPPI's claim, both pre-petition and post-petition.

---

[4] At first glance, it might appear that SuperMedia was forum shopping when it filed the Texas Action. The choice of law and forum selection provision, together with the question of the Court's ability to render a final judgment, dispel such concern.

**CONCLUSION**

For the foregoing reasons the Executory Contract Motion is DENIED. The Court GRANTS SuperMedia's request for permissive abstention and therefore will not rule on the Administrative Claim Motion.

Dated: October 9, 2013

*[signature]*
KEVIN GROSS, U.S.B.J.